# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# <u>ATLANTA DIVISION</u>

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | CRIMINAL CASE ACTION NO. |
| v. | § § | 1:23-CR-00077-SEG-JEM |
| CHARQWESHIA SIERRA MILEY, | § § | <u>UNDER SEAL</u> |
| Defendant | § § | |

## <u>DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER</u>

**COMES NOW** Defendant Charqweshia Sierra Miley ("Ms. Miley"), by and through undersigned counsel, who hereby moves the District Court under 18 U.S.C. § 3145(b) to revoke the underlying detention order of Magistrate Judge Camile Bibles of April 5, 2023 (Doc. 20, Att. 5, "Detention Order") from the District of Arizona.

Ms. Miley requests that the Court carefully review the record and after Government response thereby revoke the Detention Order as soon as possible, or otherwise expeditiously schedule a hearing to address this Motion. In support hereof, Ms. Miley shows as follows.[1]

---

[1] Miley encloses her pretrial service reports below and therefore files this motion under seal.

**Statement of Law**

18 USC 3145(b) provides that a party detained by a magistrate judge may present to the assigned District Judge a motion of revocation of the detention order, and that such motion be determined promptly. When reviewing the Magistrate Court's order, this Court "must undertake a de novo review of the factual posture of the case and provide its own findings of fact and statement of reasons for its decision." United States v. Hurtado, 779 F.2d 1467, 148[ (11th Cir. 1985). "[A]n independent review is required." Id. at 1481. This Court must not feel "constrained to look for abuse of discretion or to defer to the judgment of the prior judicial officer." Id.

**Procedural Background**

The Government obtained within the Northern District of Georgia an indictment against Ms. Miley on March 7, 2023, charging her with false statements and unlawful transfers in connection with the purchase of firearms. On March 29, 2023 Ms. Miley was arrested within the District of Arizona, where she had resided for the better part of the last year. Pretrial Services from the District of Arizona recommended the Court's granting bond to Ms. Miley, noting that conditions could be crafted to reasonably minimize any concerns of flight or danger to the community.

See Exhibit 1, Pretrial Services Report of March 31, 2023, within District of Arizona.[2]

A detention hearing was held before Judge Bibles on April 5, 2023, and the Magistrate Court detained Ms. Miley overriding the pretrial officer's recommendation. The Detention Order was predicated on dual concerns of danger to the community and risk of nonappearance, with a finding that no condition or combination of conditions of release would reasonably assure the appearance of Ms. Miley as required or reasonably assure the safety of the community. See Detention Order at 1.

The Magistrate Judge generally found "clear and convincing evidence as to danger" based on the proffered offense conduct of straw purchases of large numbers of firearms, the recovery of some of those firearms in a foreign country, and the safety concerns related to the firearm placements generally. As to risk of flight, it found Ms. Miley had no significant contacts within Arizona; that she had a prior criminal history; a history of substance abuse; facing maximum incarceration of 55 years; ties to foreign countries; and noting as an add-on finding that she and her

---

[2] The Pretrial Services Officer for the Northern District of Georgia, incidentally, after the case was transferred here, also recognized that there could be no legitimate reason for recommending anything but a reasonable bond. See attached Report of April 25, 2023, attached herein as Exhibit 2, recommending a $10,000.00 unsecured bond on conditions including prohibitions on travel and firearm access as deemed appropriate by the Court. That report also notes that Miley would be living with her mother, Cecelia Tucker, who resides in Conyers.

husband had left their home following execution of a search warrant, traveling to the opposite side of the state; and were uncooperative with law enforcement there. Detention Order at 2; see also Transcript of the Detention Hearing ("Transcript"), attached herein as Exhibit 3, at 16-18.

As elaborated below, these findings were either simply factually inaccurate, or taken out of context. In any case, whether properly made or not, none of these findings justified denying bond for Ms. Miley, as the predicates were insufficient for such denial, and there were adequate conditions that could have been, and can be, crafted to reasonably assure her appearance and the community's safety.

**<u>Magistrate Court's Analysis and Miley's Response</u>**

The Magistrate Court stressed the purported strength of evidence against Ms. Miley, stating that there was strong evidence of guilt, despite its acknowledging her presumption of innocence and the Ninth Circuit's discouraging this as a factor. (Transcript at 3, 16). The Court further acknowledged that in fact Ms. Miley had no criminal history (directly contradicting the later written finding that she did) (Transcript at18), that there were no health or mental concerns (<u>Id</u>) and that Pretrial was recommending release (<u>Id</u>.).

Yet, despite the mandate that strength or nature of evidence is to be given little weight, the Magistrate focused on essentially just that. She also let suggestive—but totally unestablished--circumstances dictate her reasoning. Despite the lack of

criminal history or any allegation of physical violence or history of flight risk, the Magistrate centered her analysis upon the charges and allegations themselves, as will be detailed below. Further, it is apparent that Ms. Miley's choices of living and individualistic lifestyle—while all perfectly legal---were being held against her.

**The Magistrate Clearly Erred in Finding Flight Risk**

The Detention Order incorrectly cites that Miley has a "prior criminal history." As noted, Miley had been arrested by state authorities, but the case was dismissed. Similarly, the claimed predicate that "The defendant has a history of substance abuse" is a gross exaggeration. The pretrial service reflects occasional marijuana and alcohol ingestion; not total abstinence, true, but hardly abuse. The statement about Miley's facing a maximum incarceration of 55 years might theoretically be true, but only if she were convicted on all counts and all counts run consecutive. This would be extremely unlikely to happen. In short, none of the above serves as a defensible basis for finding flight risk.

The Magistrate also listed as a basis of Miley's not having "significant contacts" in Arizona. While the Miley's may have only recently moved to Arizona, they had undoubtably established themselves there in building a home there.

The Magistrate spoke of the unfounded allegation that the house was mobile and that it had physically moved without the slightest bit of evidence supporting that finding (Detention Order at 2; Transcript at 16-17); and going so far as to say that

the Mileys "took off with their small home…. And were uncooperative when stopped in Apache County." (Id. at 18). That is absolutely incorrect, as the discovery videotape reveals that the Mileys were stopped by law enforcement in their vehicle.[3] There is no evidence whatsoever that the Mileys ever moved their house.

As for the Mileys being "uncooperative with law enforcement," this likewise creates no basis for detention. They were stopped in a rural county under suspicious circumstances, and on the sole basis that they were going 35 mph in a 25 mph. They were not stopped, contrary to what was proffered at the hearing, for a defective tag. Apache County is a large Native-American community, with no other discernable minorities, and the Mileys certainly stood out. In any case, there is no evidence they did anything illegal at the stop. They were not required to be cooperative, especially under the circumstances noted. Yes, Ms. Miley was arrested, but the case was dismissed. The circumstances behind the stop in any case have no bearing on the

---

[3] Any inference that the Mileys were intending to flee when accosted by police in Apache County is rebutted by the fact that their home was searched pursuant to the warrant in October 2022, with a clear signal that federal charges might follow. The Mileys hardly fled, but returned to their home and remained there up and through their time of arrest.

question of flight. Based on the foregoing, the Magistrate clearly erred in finding that Miley was a flight risk, and this portion of the decision must be reversed.[4]

**The Magistrate Clearly Erred in Finding that no Combination of Conditions Could Reasonably Assure the Safety of the Community**

The Detention Order generally cites the proffered offense conduct and allegations of straw purchases of multiple firearms, while finding that the weight of evidence against Ms. Miley was great. But the Court was largely swayed by flawed analysis: While there may been reports that some guns ended up in the Dominican Republic, there is no evidence that Ms. Miley had any reason to know this would occur. Further, it failed to consider any conditions whatsoever, merely making conclusive judgments. It would, of course, be improper to prejudge the matter and effectively conclude that Ms. Miley is guilty of the subject crimes. This is true for Ninth Circuit precedent that the Magistrate Court was bound to follow. See e.g., United States v. Townsend, 897 F.2d 989, 994 (9th Cir. 1990); United States v. Gebro, 948 F.2d 1118 (9th Cir. 1991). Indeed, it would be unfair to attach undue

---

[4] Further, while she has had a passport and has traveled internationally to many destinations, there is no evidence that she has contacts that could render her a flight risk. While the Magistrate Court may find the amount of travel unusual, there was no evidence that such was for any illegal or improper predicate. Nor was there any established nexus between that travel and certain firearms reportedly ending up in the Dominican Republic. Further, Ms. Miley would surrender her passport and pretrial bond restrictions would presumably prohibit any international contact. This portion of the Detention Order independently comprises clear error.

weight to the strength of the evidence without Ms. Miley having had the benefit of discovery and the opportunity to challenge it.

But the Magistrate Court did just that. It bypassed over the favorable points of Miley, and continually reverted back to generalistic/speculative inferences pertaining to the instant case (See Transcript 16-18), finding both that she was a flight risk and potential danger to the community.

**Reasonable Conditions Exist.** Again, the Magistrate Court bypassed its mandate to consider conditions. It was duty bound to make a finding as to why conditions could not be crafted to reasonably assure that Ms. Miley would not be a danger to the community. The test is not whether Ms. Miley would be a flight risk or danger in the abstract, but whether any concern of such could be remedied through conditions. The Court is mandated to entertain such remedies and determine on the record why they would not be sufficient to reasonably assure appearance and community safety. 18 U.S.C. § 3142 (a); See, United States v. Orta, 760 F.2d 887 (8th Cir. 1985); United States v. Hir, 517 F.3d 1081 (9th Cir. 2008). In fact, workable conditions could easily be crafted--such as ankle monitor requirements, reporting, drug testing, refraining from possessing a firearm, turning in her passport etc. As noted, two pretrial officers (District of Arizona and Northern District of Georgia), recommended that Ms. Miley be released on an unsecured bond and reasonable

8

conditions. Given that Ms. Miley has no criminal history, release with conditions would be enough to mitigate any flight risk and potential danger to the community.

Flight risks would be mitigated through the condition that Ms. Miley live with family and receive its supervision and support. Should Ms. Miley be granted bond, she would live with her mother, Ms. Tucker, at the following address: 1022 Weatherwood Place, Conyers, GA 30012. Ms. Miley grew up in Georgia and has community ties.

Taking all factors into consideration – lack of criminal history, ties to the community, and a multitude of reasonable conditions available, Ms. Miley should be granted a reasonable bond.[5]

**Argument Summary**

The Government had the burden to show there were no conditions that could reasonably assure appearance and community safety. It failed to establish these requirements, but the Court nonetheless ordered Miley detained based on misperceptions and speculative inferences--all the while overlooking the presumption of innocence, and the availability of multiple conditions to apply to this first-time charged individual.

---

[5] Miley also notes that her co-defendant Hiraldo, listed on every indictment count but Count 2, was granted an $25,000.00 appearance bond in the Southern District of New York. (Doc. 11) on reasonable pretrial reporting and travel restrictions.

In fact, each predicate of detention is easily rebutted, if not outright mistaken. The Court incorrectly premised its ruling on the incorrect finding that Miley had transported her mobile home to the New Mexico border in an apparent attempt to flee. It therefore concluded because she had reportedly been uncooperative with a traffic stop investigation and had traveled to foreign countries that detention was called for. No nexus existed, however, between her prior travelling and guns reportedly being located in the Dominican Republic. If Miley had truly desired to flee, she had had ample to do so between the five months plus she had between her home being searched, and her being arrested in Arizona. She was found at her home on both occasions; and submitted to authorities without incident each time.

In sum, none of these predicates justified detention; and even if they did, there were multiple conditions that the Court failed to remotely consider. Rather, the Court seemed to be diverted from the mandated procedures in focusing on the Miley's being different and having an individualistic lifestyle: in how and where they lived; in their travelling perhaps more than what most defendants might have done; and in their exercising their lawful right to protest a traffic stop made on questionable grounds. The Mileys did live in a remote portion of the Arizona desert. They did legally possess firearms and ammunition under Arizona law, readily understandable when considering their remoteness from more urban areas.

None of these considerations, however—especially considering that state charges had been dismissed against Miley—remotely justified detention. But, unfortunately the Magistrate Judge seized on these noncontrolling considerations, and a generalistic Government proffer of the supposed evidence, to fast-forward to an unsustainable decision.

In essence, the Magistrate's order detaining Ms. Miley cannot be sustained if one takes seriously the mandated concept that bond should presumptively be granted, and that detention decisions should be made *only* if *no* [emphasis added] combination of conditions that can reasonably assure the safety of the community and mitigate any risk of flight. See Lopez-Valenzuela v. Arpaio 770 F.3d 772, 779 (9th Cir. 2014) (noting that liberty is the norm, and that the Bail Reform Act carefully limits the circumstances under which detention may be brought). The Magistrate Court simply bypassed this required analysis; and instead relied on incorrect and speculative assertions of Ms. Miley's lifestyle against the pure substance of her bond fitness under the law.

**WHEREFORE,** Ms. Miley requests that the District Court review the existing record, and revoke the Detention Order and grant reasonable conditions of bond for Ms. Miley's observance within the Northern District of Georgia. Alternatively, she requests that the Court hold a hearing at its earliest opportunity, hear from Ms. Miley and her relatives, and thereafter reinstate bond as requested.

Respectfully submitted, this 5th day of June 2023.

                                        *s/ Mark Jeffrey*
                                        MARK JEFFREY
                                        GA Bar No. 390048
                                        Attorney for Defendant

2470 Windy Hill Road
Suite 300
Marietta, GA 30067
P: 770-933-5377
F: 770-956-2919

# CERTIFICATE OF SERVICE

This is to certify that I have on this day electronically filed the foregoing DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER with the Clerk of Court using the CM/ECF system, which will automatically send email notification to Government counsel of record:

    Theodore Hertzberg
    Office of the US Attorney
    600 Richard Russell Federal Building
    75 Ted Turner Drive
    Atlanta, GA 30303

This 5th day of June 2023.

                                      *s/ Mark Jeffrey*
                                      MARK JEFFREY
                                      GA Bar No. 390048
                                      Attorney for Defendant

2470 Windy Hill Road
Suite 300
Marietta, GA 30067
P: 770-933-5377
F: 770-956-2919